## ROBERT K. VANNEMAN vs. CLARENCE C. PUSEY.

*Municipal Corporations—Property Qualification of Mayor—Assessmen*
*of Real Estate in Firm Name.*

The charter of Havre de Grace as amended by the Act of 1890, ch. 180,
provides that the Mayor of the city shall at the time of his election and for
three months next preceding be assessed upon the tax-books of the city
with real property within the city limits to an amount not less than one
thousand dollars. At an election the respondent received the highest
number of votes and took possession of the office of Mayor when the
petitioner, the defeated candidate, claimed the office on the ground
that the respondent was ineligible at the time of the election. Respond-
ent and his partner were assessed on real estate valued at $4,400,
which had been conveyed to them as partners and tenants in common,
and the assessment was in the name of the firm. *Held*, that since the
respondent was liable severally and individually for the taxes on said
real estate, he was qualified under the terms of the charter and it was
not necessary that he should be seperately assessed with real estate to
the amount required.

Appeal from a *pro forma* order of the Circuit Court for
Harford County.

The cause was argued before MCSHERRY, C. J., FOWLER,
BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ,

*Stevenson A. Williams* and *Thos. H. Robinson* (with whom
were *Geo. L. Van Bibber* and *P. L. Hopper* on the brief), for
the appellant.

*Richard Dallam* and *Edwin G. Baetjer* (with whom was *O*
*T. Rogers* on the brief), for the appellee.

1. That the petitioner not having received the highest num-
ber of votes acquired no right to the office of Mayor by vir-
tue of the election, 7th January, 1901; that if Clarence C.
Pusey was ineligible there was no election. There is found in
some cases and in some text-books a discussion of the effect
of the ineligibility of the majority candidate, and whether in

such event the minority candidate is elected or whether there
is no election.     The Courts of the various States of this coun-
try have decided almost unanimously that in such a case the
minority candidate is not elected and there is no election.
*Saunders* v. *Haynes*, 13 Cal. 145; *Barnum* v. *Gilman*, 27 Minn.
466; *Dillon, Mun. Corp.*, 196; *State* y. *McGeary*, 44 L. R. A.
446; *State* v. *Swearingen*, 12 Ga. 23; *Wood* v. *Bartling*, 16
Kansas, 109; *Fish* v. *Collins*, 21 La. An. 289; *Lamoreaux* v.
*Ellis*, 89 Mich. 146; *Sublett* v. *Bedwell*, 47 Miss. 266; *State*
v. *Boyd*, 31 Neb. 682; *People* v. *Clute*, 50 N. Y. 451; *Com-
monwealth* v. *Cluley*, 56 Pa. St. 270; *Gill* v. *Pawtucket*, 18 R.
I. 281; *State* v. *Giles*, 2 Pin. 166.     See above and other cases
cited in *Am. & Eng. Ency.*, vol. 10, p. 758, etc.

2. That the assessment of C. C. Pusey & Co., as set forth
in the agreed statement of facts, is a compliance with Article
13, section 142, and is sufficient to qualify him to hold said
office.     A diligent examination of both American and English
authorities has not disclosed any case in which language sim-
ilar to that contained in section 142, has been construed; this
is probably due to the fact that the decision as to the qualifi-
cation of municipal officers is generally left to the municipal
legislative bodies.     We are therefore obliged to determine the
meaning of this section without the assistance to be derived
from similar adjudications.

Following the usual rules for the interpretation of statutes
the following considerations should be born in mind in any in-
quiry as to the meaning of this section.     (*a*) The object of
the provision.     Provisions of the character of those of section
142 are inserted in municipal charters for the purpose of in-
suring the election of such officers as have a personal interest
in the welfare of the community.     Thus in *Marr* v. *Sweeny*,
22 Mont. 105, the Court, in construing a provision for a prop-
erty qualification for office, said: "The Legislature doubtless
intended to prescribe such requisites for eligibility to mayor-
alty as would tend to prevent those having no substantial in-
terest in the well-being and prosperity of the municipality
from holding its chief executive office." In *Cotlin* v. *Smith*,

2 S. & R. 271, the Court said: "The object of such a pro-vision is to confine the right to those who had a sufficient ev-ident interest with and attachment to the community."

Any construction of this section ought not to restrict the right to hold office further than is required to accomplish the purpose for which the qualification is imposed. The assess-ment of C. C. Pusey & Co. is, to the extent of one-half at least, an assessment of C. C. Pusey. The amount of the real estate assessed upon him the basis of his contribution to the revenues of the city is at least one-half of $4,400.00, or twice the amount of assessment necessary to qualify him.

(*b*) The assessment of any person under the laws of the State of Maryland is the imposition of a personal liability upon him, it is not merely the valuation of the property assessed, it is the assessment of the person as well as of the property; upon the ascertainment of the amount by the fixing of the tax rate it becomes a debt due by the person assessed; whether he is in fact the owner of the property or whether the prop-erty is worth the assessment, is immaterial; the person as-sessed is bound to pay the tax; he may be sued in *assumpsit* and a judgment may be recovered against him. *County Com-missioners* v. *Claggett*, 31 Md. 210. Where the assessment is against a co-partnersnip the assessment is against the firm, *i. e.*, against the members of the firm jointly and severally; an as-sessment of a firm is therefore an assessment for its full amount against each member thereof exactly as any other liability of a firm is a liability for the full amount against each member. The effect of the assessment of C. C. Pusey & Co. with real estate to the amount of $4,400 is therefore an assessment of C. C. Pusey to an amount of either $4,400 as a partnership liability, or at least an assessment of C. C. Pusey with real estate to an amount of at least one-half of $4,400, or $2,200.

(*c*) It cannot be assumed that it was the design of the Leg-islature to exclude persons who hold valuable real estate jointly with others, and the value of whose undivided interest might be $10,000, and who properly paid their taxes, from the right to hold the office of Mayor of said city.

3.. That the provisions of section 178 of Article 13, providing that the City Council shall be judge of the qualification of Mayor, confers upon the City Council the exclusive right to decide that question, and this Court has no jurisdiction to entertain this petition.

FOWLER, J., delivered the opinion of the Court.

The questions presented for our consideration arise in the following manner.

At an election for Mayor of Havre de Grace on the 7th of January last Robert K. Vanneman and Clarence C. Pusey were the only persons voted for, the latter having received a majority of votes cast. He subsequently took the oath of office required by law, and openly assumed and thereafter exercised the functions of Mayor. At a meeting of the City Council held on January 14th, 1901, the then Mayor, Mr. Vanneman, declared Mr. Pusey elected Mayor to serve for the year 1901.. Mr. Pusey then qualified by taking the oath of office required by law, and has been ever since in the possession and exercising the duties of the office of Mayor of Havre de Grace..

On the 30th March Mr. Vanneman filed in the Circuit Court for Harford County a petition for *mandamus*, claiming that he and not Mr. Pusey was duly elected. This contention is based upon one and only one ground, namely, that Mr. Pusey is not now and never has been assessed upon the tax-books of Havre de Grace with real property within the limits of that city to an amount of not less than one thousand dollars as required by section 142 of Art. 13 of Public Local Laws (Harford County), as amended by Act of 1890, ch. 180, which among other things provides that the Mayor of Havre de Grace shall at the time of his election and for three months next preceding be "assessed upon the tax-books of said city with real property within the city limits to an amount not less than one thousand dollars."

This petition was duly answered by the defendant, and the case was tried before the Court without a jury on an agreed statement of facts, and resulted in the passage of an order

dismissing the petition. The plaintiff has appealed, and, as we have said, the only question before us is whether the defendant, Pusey, is assessed as required by law. The assessment relied on by the defendant is an assessment amounting to $4,400 of real estate in Havre de Grace in the name of C. C. Pusey & Co. This property it is conceded was owned by the defendant and his partner, Wm. H. Brown, and was conveyed to them by deed from W. S. McCombs and wife. They were, therefore, tenants in common, and as such, each was entitled to one-half of the common property. And so also they are admitted to be equal partners, and as such they own the real estate, if it be considered partnership property, in the same, that is to say, equal proportions. Hence unless we are prepared to hold that in order to qualify a person for the office of Mayor of Havre de Grace he must be separately and severally assessed with real estate to the amount required, we must conclude that the assessment in this case is sufficient and gratifies the requirements of the city's charter. But there is nothing in the language of section 142 which requires such a narrow construction. One who owns property in common with another owns his share of it, as really, in fact and in law, as if he owned in severalty. Nor do we think the fact that the assessment is in the name of the firm at all concludes the question in favor of the plaintiff, for it is evident that the real meaning of the language in which the assessment is placed upon the tax-books of the city, is that each member of the firm is not only jointly by *severally* liable for taxes.

The purpose of such provisions as the one we are now considering are evidently inserted in municipal charters not only for the purpose of securing public officers who will be interested in the welfare of the community, but especially such as will be in favor of careful and economical administration in order to secure as low a rate of taxation as is consistent with good government. The Mayor is to be the owner of, or at least, assessed with real estate, because it is well known that the owners of such property do not, as is too often the case with the owners of personal property, escape taxation. When,

therefore, the defendant's firm is assessed with real estate to the extent of $4,400 such assessment is against them not only as a firm, but it is an assessment against each member of the firm, and they are liable not only jointly but each one is liable for the full amount of the assessment. Had the assessment been made to Clarence C. Pusey as to one-half of the whole assessment, viz., $2,200, and his partner had been assessed with the other half, it is clear either would have been qualified, so far as the assessment is concerned. But, as we have seen, each partner is substantially assessed not only with one-half, but with the whole amount of the assessment. In our opinion the construction suggested by the plaintiff is too narrow. If it should be adopted, it would follow, that if the defendant, Pusey, were alone doing business in the name of Pusey & Co. and owned the whole of the real estate assessed in the name of Pusey & Co. he would not be qualified, because, although he, and he alone, would be liable for the taxes, the assessment is made in his business or firm name.

We think the assessment relied on by the defendant gratifies the provisions of the charter, and the order appealed from dismissing the petition should be affirmed.

*Order affirmed with costs.*

(Decided June 14th, 1901.)