Chief Judge Fuld.
The plaintiff, a duly designated nominee of the Democratic party for the office of councilman in the Town .of North Hempstead, brings this action against the town for a judgment declaring unconstitutional and void those provisions of sections 23 and 23-a of the Town Law which require a holder of an elective town office to be an owner of record of real property within the town.[1] Although the plaintiff owns no property in North Hempstead —it appears that he transferred title of a jointly owned home (in which the family presently lives) to his wife in 1959 — he has resided in the town for about 15 years.
Upon motions by both parties for summary judgment, the court at Special Term granted judgment for the defendant dismissing the complaint on the authority of Matter of Becraft v. Strobel (274 N. Y. 577) where, in 1937, this court upheld the constitutionality of section 23. The plaintiff appeals to us directly, pursuant to CPLB 5601 (subd. [b], par. 2), from the judgment rendered at Special Term.
Decent developments in constitutional law, as well as changes in the pattern of town and suburban living, call for a reconsideration of our 1937 decision in Becraft (274 N. Y. 577, supra)[2] and of the constitutionality of the statutes here involved. (Cf., e.g., Municipal Gas Co. v. Public Serv. Comm., 225 N. Y. 89, 95-96; Baker v. Carr, 369 U. S. 186, 254; Nashville, C. & St. L. Ry. v. Walters, 294 U. S. 405, 415.) In our view, the legislation must *420 be held unconstitutional whether we regard it from the viewpoint of the person seeking office or of the individual voter.
Although "the legislature may prescribe qualifications for office * * * it has been settled law from the earliest period in the history of our state that it cannot enact arbitrary exclusions from office. ” (Matter of Callahan, 200 N. Y. 59, 61; see, also, People ex rel. Devery v. Coler, 173 N. Y. 103, 118; Rogers v. Common Council of Buffalo, 123 N. Y. 173, 188; Barker v. People, 3 Cow. 686.) Qualifications for office must have a rational basis, such as age, integrity, training or, perhaps, residence. (Cf., e.g., Harper v. Virginia Bd. of Elections, 383 U. S. 663, 666.) If a classification is employed in prescribing qualifications, it must be nondiscriminatory and “ based on a real and substantial difference having reasonable relation ” to the object sought to be accomplished by the legislation. (Quaker City Cab Co. v. Penna., 277 U. S. 389, 402; see, also, Harper v. Virginia Bd. of Elections, 383 U. S. 663, supra; cf. Brown v. Louisiana, 383 U. S. 131, 143; Matter of Madole v. Barnes, 20 N Y 2d 169; East Meadow Community Concerts Assn. v. Board of Educ., 18 N Y 2d 129, 133.) The ownership of land, however, as a prerequisite, a condition precedent, to holding elective town office constitutes an “invidious discrimination” against nonlandowners, a sort of economic gerrymandering which runs afoul of the equal protection and due process clauses of both Federal and State Constitutions. (Cf. Harper v. Virginia Bd. of Elections, 383 U. S. 663, supra; Dusch v. Davis, 387 U. S. 112.) As the Supreme Court observed in the poll tax case, involving the qualifications of voters, “Wealth, like race, creed, or color, is not germane to one’s ability to participate intelligently in the electoral process. Lines drawn on the basis of wealth or property, like those of race * * *, are traditionally disfavored.” (Harper v. Virginia Bd. of Elections, 383 U. S., at p. 668, supra.)
Underlying the Becraft decision that the legislation in question was valid was the rationale that owners of real property ‘ ‘ ‘ may be expected to be careful and economical in administering’” town affairs (Special Term opinion of Dowling, J., 158 Misc. 844, 850). At a time when the taxation of its real property was the chief concern of a town, this reasoning may have had some validity, although we fail to see how it may be said that qualities of carefulness and frugality were ever the monopoly *421 of those owning real property. Indeed, most town problems affect owners and tenants alike: zoning, highways, parks, fire, water and sewage districts, traffic regulations — to name but a few.
Ownership of real property does not render one more interested in, or devoted to, the concerns of the town. In a society such as ours, characterized by its ‘ mobility ’ ’ and ‘ ‘ anonymity ” (Cox, The Secular City [rev. ed., 1966], p. 33), a landowner is no more likely to be permanently established in a town — and, by that token, better qualified to govern — than one who is not a property owner. Examples come readily to mind which demonstrate the unrealistic character of the property qualification: an elected town councilman, suddenly compelled by financial reverses to sell his home and move into an apartment, would be required to resign from office; an apartment dweller who owned a taxpayer in town but who commuted to his place of business in, for instance, New York City and took no interest or part in civic affairs would be fully eligible for town office; and an apartment dweller, not owning real property but with a place of business in town and deeply involved in community affairs, would be ineligible. All in all, we suggest that it is impossible today to find any rational connection between qualifications for administering town affairs and ownership of real property.
Turning from the plaintiff as candidate to the plaintiff— along with other residents of the town — as voter, the proscription against nonlandowners as town councilmen amounts to a <£ dilution ” or ££ debasement ” of the vote not unlike that occasioned by the malapportionment which the Supreme Court has held violative of the equal protection clause. (See, e.g., Reynolds v. Sims, 377 U. S. 533; Gray v. Sanders, 372 U. S. 368.) “ [T]he right of suffrage ”, said the court in the Reynolds case (377 U. S., at p. 555), “ can be denied by a debasement or dilution of the weight of a citizen’s vote just as effectively as by wholly prohibiting the free exercise of the franchise. ” The plaintiff’s right of franchise, as well as that of all other voters, has been equally circumscribed by excluding from their choice for a town elective office those who do not own real property.
The statutory restriction also violates section 1 of article I of the State Constitution which provides that ££ No member of this state shall be disenfranchised, or deprived of any of the *422 rights or privileges secured to any citizen thereof ’ ’. Wide latitude in choosing public officers is among the rights secured by this constitutional provision. In effect, it vests electors with the right to choose public officers “ on whatever principle or dictated by whatever motive they see fit, unless those motives contravene common morality ”. (Matter of Callahan, 200 N. Y. 59, 62, supra; see, also, Reynolds v. Sims, 377 U. S. 533, 562, supra.) The denial of such a right to electors on property grounds becomes more egregious today, when a large proportion of the population in many towns, especially in suburban areas, are apartment house dwellers.[3] Moreover, we know from experience that it is often the wife who holds record title to a home or other property and that, with increasing frequency, owners of real property have occasion to place the record ownership in real estate investment trusts or syndicates.
In the view thus taken, we find it unnecessary to consider the other arguments advanced by the plaintiff.
The judgment appealed from should be reversed, with costs, and the declaratory judgment sought in the complaint granted.

. Section 23 of the Town Law recites that:
“ Every elective officer of the town at the time of his election and throughout his term of office, shall be an elector of the town and shall be the owner of real property in the town ”
and section 23-a provides for the forfeiture of the office if the office holder fails or refuses to establish his record ownership of such real property after 15 days’ written notice and demand.

. The parties have not referred us to any other case dealing with the precise subject. Our research has uncovered a few which adhere to the same result as in Becraft but, except for one in Florida (Nichols v. State, 177 So. 2d 467 [1965]), they were decided more than 50 years ago. (See, e.g., Vanneman v. Pusey, 93 Md. 686 [1901]; State ex rel. Fletcher v. Ruhe, 24 Nev. 251 [1898]; McMillin v. Neeley, 66 W. Va. 496 [1909].) For what it is worth, it is to be noted that the proposed new State Constitution (art. VII, § 1, subd. b) expressly declares that the- “ ownership of property ” shall never “ be made a qualification for” public office or employment. (See, also, Minn. Const., art. I, § 17; N. M. Const., art. VII, § 2.)

. It is of interest, and perhaps of some significance, that there has never been a property qualification for public office in cities, where apartments were first built and are still more numerous than elsewhere.