**Paul O. DAVIS**
**and**
**Robert J. Hoch, Plaintiffs,**
**v.**
**George MILLER, Mayor of Takoma Park, et al., Defendants.**
**Civ. No. 72–237.**

United States District Court,
D. Maryland.
March 13, 1972.

Edward L. Genn, Silver Spring, Md., for plaintiff Davis.

John J. Pagano, Baltimore, Md., for intervening plaintiff Hoch.

Vincent L. Gingerich, Takoma Park, Md., for defendants other than the Attorney General.

Henry R. Lord, Baltimore, Md., Deputy Atty. Gen., for Francis B. Burch, Atty. Gen.

Jerome W. Cox, Annapolis, Md., for Maryland Municipal League, amicus curiae.

THOMSEN, District Judge.

The public local laws generally known as the Charter of the City of Takoma Park required that "[e]ach candidate for councilman shall at the time of his nomination be not less than twenty-five years of age; shall be a voter of the city; and shall have resided in the precinct or area from which he shall be nominated for at least one year immediately preceding his nomination and be a property holder therein." [1]

Plaintiff Davis, who seeks nomination as a candidate for councilman at the "caucus" (meeting of citizens) to be held on March 14, 1972, to nominate candidates for the March 28 election, fulfills all the qualifications except that he owns no real property in the city. He instituted this action seeking a declaratory judgment that the property requirement violates the Equal Protection Clause of the Fourteenth Amendment and an injunction against its enforcement. [2]

The Charter of the City of Frostburg, § 189, provides: "The Mayor must have resided in the City of Frostburg for at least three (3) years immediately preceding his election and shall be a qualified voter of the city, and shall be assessed on the assessment books of the city for at least one year preceding the election date with real property, owned individually or jointly with spouse, at a valuation of at least Two thousand ($2,000.00) dollars."

Intervening plaintiff Hoch, who wishes to run for mayor at the election to be held on April 4, meets all qualifications except the property qualification. He also seeks declaratory and injunctive relief, and was allowed to intervene.

The requests for a temporary restraining order were set for hearing on March 10. All parties appeared by counsel, and counsel for the Maryland Municipal League appeared as amicus curiae. Defendants moved to dismiss the complaint, but stipulated that if the respective motions to dismiss were denied, the proceedings should be telescoped, and the question whether a permanent injunction should be issued or the case dismissed should be decided promptly on the agreed facts.

The Attorney General of Maryland had been joined as a defendant. The complaint alleged that he is "the person responsible for advising the other defendants of the alleged propriety of their actions." This allegation is not supported by the applicable law, Art. V, § 3 of the Maryland Constitution, nor by any facts shown. His motion to dismiss the case as against him was granted early in the hearing, but the Deputy Attorney General remained as an additional amicus curiae.

The standard of review to be applied in determining the constitutionality of provisions requiring that public officers possess specific qualifications is still in a formative stage. Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (February 24, 1972); Stapleton v. Clerk for City of Inkster, 311 F.Supp. 1187 (E.D. Mich.1970); Gonzales v. City of Sinton, Texas, 319 F.Supp. 189 (S.D.Tex.1970); Landes v. Town of North Hempstead, 20 N.Y.2d 417, 284 N.Y.S.2d 441, 231 N.E. 2d 120 (1967); Schweitzer v. Clerk for City of Plymouth, 381 Mich. 485, 164

---

1. Montgomery County Code, Ch. 49, § 49–3(m). There are similar provisions for a candidate for mayor, except that he must be thirty years of age.

2. The action was brought as a class action, but no determination that it should proceed as a class action has been made.

N.W.2d 35 (1969). In *Turner* the Court found it unnecessary to consider a "compelling interest" test since it held that the freeholder requirement for members of a county school board in Georgia violated the less demanding "traditional test for a denial of equal protection: whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective." 396 U.S. at 362, 90 S.Ct. at 541. In *Bullock* the Court held that candidate qualifications which have a real and appreciable impact on voters "must be 'closely scrutinized' and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster." 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92.

The provisions under attack in the instant case have a real and appreciable impact on voters. *Gonzales,* supra, and *Landes,* supra. The only statement of the Court of Appeals of Maryland bearing on the purpose of a property holding requirement for municipal officers which has been cited or found is in Vanneman v. Pusey, 93 Md. 686, 49 A. 659 (1901). There the Maryland Court noted that such provisions "are evidently inserted in municipal charters not only for the purpose of securing public officers who will be interested in the welfare of the community, but especially such as will be in favor of careful and economical administration in order to secure as low a rate of taxation as is consistent with good government", at p. 690, 49 A. at p. 659. The court was not confronted with the issue of the constitutionality of property holding requirements, and the discussion apparently assumed that such a provision was valid.

In *Landes,* supra, the Court of Appeals of New York held unconstitutional a property ownership requirement for elective officials in a town. In *Schweitzer,* supra, cited by defendants, the Michigan Court in 1969 refused to hold such a provision unconstitutional, stating: "The application of the equal protection clause to qualifications for holding public office, as opposed to voting, is a step which the United States Supreme Court has not yet taken." 381 Mich. at 491, 164 N.W.2d at 38. However, as Chief Judge Freeman of the United States District Court for the Eastern District of Michigan noted in *Stapleton,* supra, the Supreme Court did take that step in *Turner,* decided on January 19, 1970. Both *Stapleton* and *Gonzales,* supra, held that provisions similar to those challenged in the case at bar were unconstitutional.

In light of the development of the controlling law in *Turner* (1970) and *Bullock* (1972), and of the decisions in *Landes, Gonzales* and *Stapleton,* this court concludes that the provisions under attack in this case are not reasonably necessary to the accomplishment of a legitimate objective.[3]

The able attorney for the defendants advanced every reasonable argument in support of the constitutionality of the provisions under attack and in opposition to the granting of relief at this late hour. However, it is now so clear that the provisions under attack are unconstitutional that a balancing of the equities requires the court to grant prompt relief.

The court has, therefore, signed a judgment order (1) declaring that the contested property holding requirements violate the Fourteenth Amendment, and (2) granting a permanent injunction against their enforcement.

---

3. In view of *Bullock* and other recent authorities, this court cannot follow Stansbury v. Maslin, a decision of the Circuit Court for Harford County (Close, J., 1970), which relied on *Schweitzer* and *Vanneman* in holding a similar requirement constitutional.