OPINION OF THE COURT
Samuel L. Green, J.
The sole issue in this declaratory judgment action is the constitutionality of a portion of subdivision 2 of section 8-100 of the Election Law. The statute provides that polls shall be open for voting in State primary elections between noon and 9:00 p.m. in all counties except in the City of New York and the Counties of Nassau, Suffolk, Westchester, Rockland and Erie where the polls shall be open between 6:00 a.m. and 9:00 p.m. This section also provides that for general, special, and other elections, the polls shall be open between 6:00 a.m. and 9:00 p.m.
In order to survive an equal protection challenge, a statute must not make artificial differences which deny similarly situated citizens the opportunity to exercise a fundamental right. Since subdivision 2 of section 8-100 gives preference to primary election voters in selected *712 urban counties over those in rural counties without any rational basis for doing so, that portion of the statute is unconstitutional.
Plaintiff Anthony Barone, M.D., is a resident of the City of Jamestown in the County of Chautauqua and is Chairman of the Chautauqua County Democratic Committee. Plaintiff Raymond F. Gallagher is a resident of the City of Lackawanna in the County of Erie and is candidate for the Democratic nomination for State Comptroller in the primary to be held on September 23, 1982. Plaintiffs contend that subdivision 2 of section 8-100 of the Election Law denies them the equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution and section 11 of article I of the New York State Constitution; the freedom of political assembly guaranteed by the First Amendment of the United States Constitution; and the right not to be disfranchised or deprived of the rights and privileges guaranteed by section 1 of article I of the New York State Constitution. Plaintiffs request an order directing the Board of Elections to promulgate rules and regulations establishing the polling hours in all election districts throughout the State from 6:00 a.m. to 9:00 P.M.
Historically, primary elections were a matter of local concern, but now they are conducted State-wide. In 1973, the hours were set at noon to 9:00 p.m. except for the City of New York where the hours were 6:00 a.m. to 9:00 p.m. These extended hours were applied to Nassau County in 1977, to Suffolk, Westchester and Rockland Counties in 1981, and to Erie County in 1982.
There is no question that a declaratory judgment is a proper remedy for determining the constitutionality of a State statute and that plaintiffs have standing to seek such relief (Landes v Town of North Hempstead, 20 NY2d 417; Phelan v City of Buffalo, 54 AD2d 262, 265).
A review of the cases dealing with the question of the validity of a State statute which, in any one of a variety of ways, limits the opportunity to vote, indicates that in determining whether or not such a statute violated the equal protection clause, a court-must consider the facts and *713 circumstances surrounding the law, the interest which the State claims to be protecting and the interest of those who claim to be disadvantaged by the classification which impedes their right to vote (see, e.g., Williams v Rhodes, 393 US 23, 30). Within this framework, the court now turns to plaintiffs’ two-pronged equal protection argument.
First, they contend that the difference in subdivision 2 of section 8-100 between the polling hours for primary and general elections is irrational. Second, they submit that the longer primary polling hours specifically provided for the urban counties deprive the citizens in the other 52 counties of an equal opportunity to vote. The constitutional question then is whether the provision for different polling hours for State primaries should be sustained if some rational basis can be shown (Rosario v Rockefeller, 410 US 752; McDonald v Board of Elections, 394 US 802) or whether it must withstand a more rigid standard of review by establishing some ground of difference having a fair and substantial relation to the object of the legislation (Reed v Reed, 404 US 71, 76; Weissman v Evans, 56 NY2d 458), or a compelling State interest to justify the difference (Harper v Virginia Bd. of Elections, 383 US 663).
Respondents are entitled to the presumption of constitutionality that attaches to all State statutes. However, because the fundamental right of self-expression through the public ballot equally with one’s peers is the essence of a democratic society (Dunn v Blumstein, 405 US 330; Reynolds v Sims, 377 US 533), respondents bear the burden of justification for the different primary polling hours in subdivision 2 of section 8-100. Since respondents have failed to demonstrate any rational basis for differentiating generally, between polling hours for primary and general elections, or specifically, between expanding primary polling hours for some counties but not others, that portion of subdivision 2 of section 8-100 relating to primary polling hours cannot pass constitutional muster under even the least exacting standard of constitutional scrutiny.
Voting in a primary election is as protected against State encroachment as voting in a general election (Bullock v Carter, 405 US 134; Carrington v Rash, 380 US 89; People ex rel. Hotchkiss v Smith, 206 NY 231). Fewer voters turn *714 out for primary elections than for general elections, and thus each primary vote takes on greater significance. Having established a general scheme of voting hours from 6:00 a.m. to 9:00 p.m. for all elections other than primaries, the State cannot single out primaries for more restrictive treatment without at least some rational basis for doing so, and here, the State offers no reason at all.
In response to plaintiffs’ second argument in an effort to justify the varying hours of operation for polling places in State primary elections, the State offers two unconvincing rationales — cost and convenience. The State contends that the piecemeal exceptions to the noon to 9:00 p.m. primary polling hours are justified because they afford commuters in urban areas the opportunity to vote early in the morning. Respondents contend that longer hours are not needed in the rural counties where similar considerations are not present. They further submit that the additional costs of staffing the polls for an extra six hours would be prohibitive to the counties and local election districts which must bear the cost of the primaries.
The State fails to explain, however, why an urban commuter is entitled to more of an opportunity to vote than a rural resident. The bill jackets in support of the recent statutory exceptions for Suffolk, Rockland, Westchester and Erie Counties explain that “recent trends show that fewer and fewer are voting in primary elections. These elections, however, are a crucial link in the democratic process. Extended voting hours will make it easier for people to vote and should help increase voter turnout and voter participation.” Surely, this rationale is no less compelling for the voters in the 52 counties who continue to be subjected to the more restrictive primary polling hours of noon to 9:00 p.m.
The circumstances alleged in plaintiff Barone’s affidavit illustrate the discrimination inherent to the statute. He is a self-employed physician and surgeon who makes his rounds at two hospitals from 8:00 a.m. to noon, holds office hours from noon until 5:00 p.m. and then leaves to make his evening hospital rounds until 9:00 p.m. On primary day, Dr. Barone’s workload is compounded because his duties as Chairman of the Chautauqua County Democratic Committee require him to remain in his office to receive *715 calls from party workers and poll watchers. Thus, the only hours for Dr. Barone to vote on primary day are from 6:00 a.m. to 8:00 a.m., but the polls in Chautauqua County do not open until noon. Subdivision 2 of section 8-100, therefore, has a real and appreciable impact upon him and others likely situated and also imposes an absolute ban on their right to vote between 6:00 a.m. and noon (cf. Rosario v Rockefeller, supra).
The discriminatory impact of the statute may also result from the anticipated competition between segments of the media in trying to project the winner of the primaries as early as possible. A rural resident may quickly discover by listening to “news updates” that his or her vote would be meaningless because another candidate had already been predicted the winner based upon returns in the 10 counties where the polls opened at 6:00 a.m. A primary candidate would surely be distressed at the prospect that his supporters in up-State rural counties would refrain from voting because one of his down-State primary opponents had already been projected as an early winner, on the 12:00 noon news or the 6:00 p.m. evening news. “The whole purpose of the Election Law and of the Constitution under which it is enacted, is that, within reasonable bounds and regulations, all voters shall, so far as the law provides, have equal, easy and unrestricted opportunities to declare their choice for each office” (Matter of Callaghan v Voorhis, 252 NY 14, 17-18).
The State’s cost rationale fares no better. It has been estimated that to extend primary voting hours to 6:00 a.m. to 9:00 p.m. across the State will cost approximately $1,000,000. These costs would be borne by the localities (Election Law, §§ 3-420, 4-136), and would result from added staffing and administrative supervision at the polling sites. The bill jackets supporting the recent extension of the 6:00 a.m. to 9:00 p.m. primary hours for Rockland, Westchester and Erie Counties concede, however, that these added costs are “minimal”. In any event, saving money is no reason to deny one a constitutional right for such rights are priceless (Shapiro v Thompson, 394 US 618, 633).
*716 Respondents rely heavily upon Rosario v Rockefeller (410 US 752, supra) and McDonald v Board of Elections (394 US 802, supra). They contend that although subdivision 2 of section 8-100 may make voting more difficult to some groups who cannot easily get to the polls, it does not totally ban a particular voter from his or her right to vote and, therefore, is constitutional. But the law at issue in Rosario was quite different in its purpose and effect than subdivision 2 of section 8-100. There the law required all voters to enroll in the party of their choice at least 30 days before the preceding general election in order to vote in the next primary. Though eligible to enroll, petitioners failed to do so and were therefore ineligible to vote in the 1972 primary. The court found the statutory scheme constitutional because it uniformly applied to all voters regardless of the county in which they cast their vote and was supported by an acceptable rationale of cleterring the practice of primary election “raiding” by opposing party members which was likely to occur if a longer enrollment period was enacted.
The scheme of subdivision 2 of section 8-100, however, is arbitrary, not uniform, and is unsupported by any rational basis. “The right to vote freely for the candidate of one’s choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of the representative government. And the right of sufferage can be denied by a debasement or dilution of the weight of a citizen’s vote just as effectively as by wholly prohibiting the free exercise of the franchise” (Reynolds v Sims, 377 US 533, 555, supra).
In McDonald v Board of Elections (394 US 802, supra) unsentenced inmates awaiting trial in Cook County Jail could not vote because they were one of a number of classes for whom no provision for absentee voting was made. The court sustained the statute because what was perceived at stake was not the right to vote but only the pretrial detainee’s alleged right to receive absentee ballots which the court held was not entitled to constitutional protection. The court further determined that Illinois had a rational basis to differentiate between physically and judicially handicapped persons, as well as between unsentenced in *717 mates incarcerated within and without their resident counties. The court concluded (p 809) that since a State Legislature had wide discretion in voting matters, it should be allowed to take reform “‘one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind,’ Williamson v. Lee Optical of Okla., Inc., 348 U. S. 483, 489”.
But in the instant case a “step at a time” approach will not cure the constitutional effect of depriving citizens and candidates equal access to the polls. The instant case involves a distinction between geographical areas, i.e., counties, rather than between identifiable groups of people as in McDonald (supra). In such a situation, a State must demonstrate that the classification is neither arbitrary nor capricious but rests upon some reasonable consideration of difference of policy (Levy v Parker, 346 F Supp 897, 902, affd 411 US 978; see, also, Weissman v Evans, 56 NY2d 458, supra). The State has failed to carry out its powers and duties of taking “all appropriate steps to encourage the broadest possible voter participation in elections” by not making the longer hours from 6:00 a.m. to 9:00 p.m. apply State-wide (Election Law, § 3-102, subd 13). Therefore, the statute is unconstitutional because it denies plaintiffs the equal protection of the laws under both the Federal and State Constitutions.
Since the law regarding the times for polling hours in primary elections is held unconstitutional by this decision, the polling times for the September 23,1982 primary shall be consistent with the remaining portion of subdivision 2 of section 8-100. Those provisions, which are in no way affected by this decision state that the hours for a general, special and “every other election [shall be] from six o’clock in the morning until nine o’clock in the evening.” (Emphasis supplied.)
For the reasons set forth, the relief requested in the complaint is granted to the extent that it seeks a declaration that the portion of subdivision 2 of section 8-100 of the Election Law which refers to primary elections is unconstitutional. In all other respects, the relief requested is denied.