Fuchsberg, J.
(dissenting). I believe that the judgment in the case brought by Anthony Barone, cháirman of the Democratic Committee of the County of Chautauqua and Raymond F. Gallagher, candidate for the Democratic *749 nomination for State Comptroller, should be affirmed and that the order of the Appellate Division, Third Department, in the case brought by Erastus Corning, Mayor of the City of Albany, and five other registered voters, should be modified to declare the first clause of subdivision 2 of section 8-100 of the Election Law unconstitutional.
This would leave standing the balance of section 8-100 of the Election Law, under which the polls in all 62 counties of the State are required to be open for voting on election days between the hours of 6 a.m. and 9 p.m. At present, instead, while the polls are available in primary elections to our citizens in 10 counties during these hours, they are available to the citizens of the other 52 counties only for the 40% shorter period of between noon and 9 p.m. The change I would thus effect would mean that primary elections, the ones which are the concern of the two cases before us now, from today on would provide all voters in the State with the fuller opportunity to participate now enjoyed only by some.
By thus wiping out the existing discrimination against the voters of most of our counties, we would be acting in accord with the “equal protection” due all our people in the furtherance and preservation of one of their most precious and fundamental privileges, that of suffrage. While so serving the demands, as I understand them, of our Constitutions, Federal and State, on a purely pragmatic level we would also increase voter participation, a matter of repeated and continuing concern to all those interested in maintaining our government as a viable democracy. It hardly needs saying that unless voter lethargy is rolled back a free society cannot hope to continue to flourish. Indeed, it has been stated authoritatively that the ballot box is the ultimate safeguard of the civic and political rights of all Americans (Reynolds v Sims, 337 US 533, 561-562).
To be stressed too is that we deal here with much more than a demographically classified right to equality in entitlement to monetary benefits (see, e.g., Weissman v Evans, 56 NY2d 458; Dandridge v Williams, 397 US 471). It is now a long time since the Supreme Court, in West Coast Hotel Co. v Parrish (300 US 379), turned our consti *750 tutional jurisprudence away from the doctrine of Lochner v New York (198 US 45). Since then, the courts have maintained an almost complete dichotomy between legislation which affects “personal” rights, including of course the crucial one involved here, and those which are characterized as “property” rights.
It is for no lesser reasons that the inroads produced by subdivision 2 must be subjected to the strict scrutiny test, which, simply stated, places the burden on the State itself to demonstrate both that a compelling State interest is served by a classification such as the one we confront here and that the classification constitutes the least drastic means available to satisfy that interest (Illinois Elections Bd. v Socialist Workers Party, 440 US 173; see, generally, Tribe, The Supreme Court, 1972 Term — Foreword: Toward a Model of Roles in the Due Process of Life and Law, 87 Harv L Rev 1; San Antonio School Dist. v Rodriguez, 411 US 1, 98 et seq. [Marshall, J., dissenting]; see, also, Gunther, The Supreme Court, 1971 Term — Foreword: In Search of Evolving Doctrine on a Changing Court — A Model for a Newer Equal Protection, 86 Harv L Rev 1).
Yet, on the records before us, as more fully described in the opinions of Justice Samuel L. Green in the Barone case (113 Misc 2d 711) and of Justice Lawrence E. Kahn in the Corning case (113 Misc 2d 707), the State has satisfied neither burden. Essentially, it has sought to justify the variation in voting hours on grounds, not unquestioned factually, which, at best, amount to no more than convenience and economy. Its sole explanation for circumscribing the voting hours for most of our State is that failure to do so may impose some financial burden for the additional staffing of the polls.* In any event, economic considerations such as this must yield when a fundamental right is at stake (Shapiro v Thompson, 394 US 618, 633). As this court has had occasion to put it, in such circumstances “spectres of assertedly prohibitive cost” are to be disregarded (Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd., 41 NY2d 84, 90).
*751 It seems clear, therefore, that the minimal rational basis test, to which the Appellate Division in the Corning case was reduced to explain the result it reached, is inappropos.
It also follows that the Barone judgment should be affirmed and the Appellate Division’s order in Corning modified to declare subdivision 2 of section 8-100 of the Election Law unconstitutional.
In Matter of Corning v Board of Elections of Albany County: Order affirmed, etc.
In Barone v Carey: Judgment, insofar as appealed from, reversed, etc.

 Ironically, the legislative history of section 8-100 has evaluated any added costs for expanding poll hours as relatively “minimal” (L 1981, ch 628; L 1982, ch 97).