Thomas J. Murphy, J.
By order to show cause dated March *619 14, 1977, petitioners above named seek a judgment, pursuant to CPLR article 78 that the action taken by respondents in removing them from their respective positions on the zoning board of appeals violates statutory and constitutional mandates. Petitioners further contend that respondents’ action was arbitrary, capricious and an abuse of discretion and that it was not supported by substantial evidence. The order to show cause was signed by the Honorable Richard Aronson and brought on for hearing before this court on April 4, 1977.
On December 30, 1976, the Town Board of the Town of Onondaga enacted subparagraph K to article II, section 3 of its code of ethics to be effective January 1, 1977 as follows: "No town officer, employee or any member of the Town Board; Planning Board; Zoning Board of Appeals or any other Town administrative board, commission or agency shall be a political committeeman or committeewoman or the Chairman or Vice-Chairman of a political party.”
As a result of the enactment of this legislation, petitioners Belle and Malfitano, who had served on the zoning board of appeals for a period of 2 years and 17 years respectively, were removed from their positions after a public hearing held on March 7, 1977. Respondents allege that the violation of the town’s code of ethics was clearly established and occurred in a public forum.
That the town was authorized and mandated to adopt a code of ethics is clear in section 806 of the General Municipal Law. It is not quite as clear whether that section limits political activity as subparagraph K to article II, section 3 of its code provided. The comprehensive language upon which respondents rely in the statute is: "and such other standards relating to the conduct of officers and employees as may be deemed advisable. Such codes may regulate or prescribe conduct which is not expressly prohibited by this article but may not authorize conduct otherwise prohibited.”
A review of article 18 of the General Municipal Law does not reveal that "political activity” is the type of conflict of interest that the article contemplates or what the Legislature had intended.
Respondents further contend that similar types of restrictions have existed for nearly 40 years commencing with the enactment of the Hatch Political Activity Act (US Code, tit 5, § 118 et seq., now § 7325). However, that act has been diluted by more recent legislation by Congress freeing State and local *620 employees of many Federal constraints on political activity (Federal Election Campaign Act Amendments of 1974, § 401 (a); US Code, tit 5, § 1502, subd [a], par [3]). Section 73 of the Public Officers Law, entitled, "Business or professional activities by state officers and employees and party officers” is also cited to further respondents’ claim. That section includes public officers whose political activity would be an obvious conflict with their offices, specifically Judges, Attorney-General, District Attorneys or Assistant District Attorneys. That section is limited to the offices specified and does not extend to other quasi-judicial officers, such as members of a zoning board of appeals.
Similarly, a 1975 opinion of the Attorney-General (1975 Atty Gen [Inf Opns] 268) concluded that there was no conflict of interest between the positions of a member of a zoning board of appeals and officer of a town political committee. It was stated that there was no statutory prohibition against holding both positions under either article 18 of the General Municipal Law or any other provision of law. The Attorney-General further maintains that a common-law incompatibility of public offices under the principles set forth in People ex rel. Ryan v Green (58 NY 295) is not present since a political party officer or member of a political party committee does not hold a public office.
The court is constrained to agree with the opinion of the Attorney-General of the State of New York.
Further, such a limitation on political activity in the subject code of ethics raises serious Federal and State constitutional questions. Political activity has been found to be within the purview of the First Amendment freedoms, although not expressly guaranteed by the Bill of Rights (see Williams v Rhodes, 393 US 23). Section 1 of article I of the State Constitution provides that "No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof.” The "political activity” clause added to the code of ethics does not confer any benefits to the public which outweigh the restraints on constitutional rights. One case devised a standard for applying the equal protection clause to a statute which is suspect on constitutional grounds (Dunn v Blumstein, 405 US 330). The test weighs "the character of the classification in question, the individual interests affected by the classification; and the governmental interests *621 asserted in support of the classification” (p 335). The statute in question does not meet the burden of this test nor have the respondents adequately shown that there is a compelling governmental interest involved. It has not been shown, indeed, respondents state in their memorandum of law that "there is presently no indication of a conflict of interest having yet arisen.”
In Phelan v City of Buffalo (54 AD2d 262, 267) citing Storer v Brown (415 US 724, reh den 417 US 926) it is stated, "[t]he right to associate for political purposes is constitutionally protected. The imposition of substantial burdens on its exercise is suspect under the First and Fourteenth Amendments unless essential to serve a compelling State interest.” That case also explains how difficult it is to distinguish between allowable and protected restrictions under the equal protection clause. Each constitutionally protected situation must be decided upon its own merits with predictability being very difficult (p 267). Specific interpretations include the following situations. In 1972, the United States Supreme Court reaffirmed the proposition that a nontenured public employee may not be dismissed for exercising his First Amendment rights (Perry v Sindermann, 408 US 593). And, in Illinois State Employees Union, Council 34 v Lewis (473 F2d 561), it was held that a nonpolicy making State employee not protected by civil service may not be discharged solely for refusing his political allegiance from one political party to the other.
If the subject amendment were written to apply only to town officers who exercised judicial or quasi-judicial functions, then it might be more supportable constitutionally, although this court declines to so rule because that issue is not before it. In this amendment, however, the legislation treads equally on the constitutional right of a janitor, a highway garage mechanic and members of the board of zoning appeals.
Clearly, such a restraint on political activity as the subject legislation carried to its logical conclusion would restrict any employee of any municipality or holding any public employment from serving as an officer of any political party. This court finds such a restraint of constitutional rights was not intended in enacting the enabling legislation.
The court finds that the "political activity” clause in question violates both the Federal and State Constitutions as afore-mentioned. Therefore, respondents’ petition be and it hereby is dismissed.