**Michael O. BILLINGTON, Plaintiff,**

v.

**Albert HAYDUK and Joseph McNamara, as Commissioners of the Board of Elections, Westchester County, William Bruns and Marianne Oldi, as Deputy Commissioners of the Board of Elections, Westchester County, and Francis A. Nicolai, Defendants.**

No. 77 Civ. 4380.

United States District Court,
S. D. New York.

Sept. 15, 1977.

972

See also, D.C., 439 F.Supp. 975.

Jeremiah S. Gutman, Levy, Gutman, Goldberg & Kaplan, New York City, Westchester Civil Liberties Union, for plaintiff.

David N. Brainin, Westchester County Atty., White Plains, N. Y., for defendants Hayduk, McNamara, Bruns and Oldi; Jonathan Lovett, Deputy County Atty., Lester D. Steinman, Asst. County Atty., White Plains, N. Y., of counsel.

### OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, the United States Labor Party nominee for the office of Westchester County Executive, has moved by order to show cause to preliminarily enjoin the Commissioners and Deputy Commissioners of the Westchester County Board of Elections from enforcing or attempting to enforce the provisions of Article III, Section 15 of the Westchester County Charter against him in conjunction with his attempted candidacy in the upcoming general election to be held on November 8, 1977.

Article III, Section 15 of the Westchester County Charter ("the Charter") requires that "[the county executive] shall at all times be a qualified elector of the county, and shall have been a *resident freeholder* of the county for at least five years prior to his election" (emphasis added). Plaintiff, a

duly registered voter, has resided in Westchester County for only approximately four months. He owns no property in that county. In August 1977, he filed a nominating petition with the office of the Board of Elections of Westchester County. On August 29, 1977, the individual defendant Nicolai filed an objection thereto. By letter dated that same day, the Board of Elections notified plaintiff that their records indicated that he did "not fulfill the five year residency qualification" mandated by the Charter and that, consequently, his name would not appear on the ballot as a candidate on November 8, 1977.

This litigation followed. Plaintiff challenges the Charter provision in issue on constitutional grounds, and by this motion seeks to prevent defendants from excluding his name from the ballot pending resolution of this action on the merits. On September 12, 1977, the return date of this motion, plaintiff moved to consolidate the trial of this action on the merits with the hearing on his application for a preliminary injunction. This request was opposed by defendants, and I restricted the examination of plaintiff to those matters relevant to the instant motion, allowing defendants' counsel to reserve the right to question plaintiff on issues relevant to the underlying merits of the case at a subsequent trial.

■ Defendants initially dispute plaintiff's *bona fides* as a Westchester resident and domiciliary. Testimony elicited at the hearing on this motion indicates that as of June 1, 1977, plaintiff has resided at 119 South Highland Avenue, Apartment 6H, Ossining, New York. For approximately half a month prior to that time he resided with a friend in Yonkers, New York. He has a telephone listing in his name at the Ossining address; although he also has a Manhattan telephone listing, he no longer maintains a residence in New York City. The Ossining address is the mailing address given for the Westchester headquarters of the United States Labor Party. Although plaintiff moved to Westchester because of his political activities and his desire to set up a local headquarters there, he testified

that he did not move merely out of a desire to run for office in that county. He intends to live in Westchester, and has no other residence nor present intention to leave the county. In light of this testimony, it appears that he is a *bona fide* Westchester domiciliary, and, as such, is a proper party to prosecute this suit.

As a threshold issue, defendants contend that federal injunctive relief is unavailable in this case because New York Election Law § 330 and N.Y.C.P.L.R. Article 78 provide plaintiff with an adequate remedy at law. Section 330 provides for a summary proceeding to be brought in New York State Supreme Court by an aggrieved candidate to determine legal and factual questions arising from, *inter alia*, the designation of candidates and contents of official ballots. It has been invoked to constitutionally invalidate certain durational residency requirements for political office eligibility. *See Phelan v. City of Buffalo*, 54 A.D.2d 262, 388 N.Y.S.2d 469 (4th Dept. 1976); *Berger v. Friese*, 45 A.D.2d 734, 356 N.Y.S.2d 648 (2d Dept. 1974). Article 78 provides for a proceeding in the nature of certiorari, mandamus, or prohibition to be brought to challenge, review or compel certain official action.

■ Defendants' contention, however, confuses the issue of adequacy of a legal remedy, which would obviate the need for extraordinary injunctive relief, with that of adequacy of a state remedy, which would cause a federal court to consider the applicability of the doctrine of abstention, or in a proper case, that of exhaustion of state remedies. The fact that plaintiff could have chosen to pursue a non-exclusive course in state court, either through § 330 or Article 78, would be relevant on the issue of whether this Court should abstain from a consideration of the case so as to allow the state court to initially construe the state law in issue. Although abstention in this context is a desirable means of possible avoidance of a federal constitutional confrontation, it is inappropriate here since the running of the statute of limitations on the state suits would operate to bar state court

974

consideration of plaintiff's claims as of September 8, 1977. The defendants through their counsel have totally rejected this Court's suggestion as to waiving the statute of limitations defense.

Even if the state route were presently available, plaintiff's claims in such proceedings, as here, would sound in equity and not in law. Plaintiff seeks a declaration that the obstacles he faces are impermissible ones; he seeks to halt the purported interference with his protected rights. It is readily apparent that his grievance is not compensable in money damages or other legal remedies. It is the opportunity to run for political office that he desires. He clearly has no adequate legal remedy; thus defendants' contentions in this regard are misplaced.

Turning to a consideration of the merits of this motion, I note that the standard in this Circuit for obtaining a preliminary injunction is an alternative one. Such relief will issue on a clear showing of a threat of irreparable harm and either probable success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation coupled with a balance of hardships tipping decidedly in favor of the party seeking relief. *Jacobson & Co., Inc. v. Armstrong Cork Co.*, 548 F.2d 438 (2d Cir. 1977); *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356 (2d Cir. 1976); *Sonesta International Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247 (2d Cir. 1973). The nature of the preliminary injunction sought is implicitly mandatory in nature—that is, if defendants are restrained from enforcing the Charter provision against plaintiff, plaintiff's name must be placed on the ballot. This may require that the possibility of "extreme or very serious damage" be shown, *Clune v. Publishers' Assoc. of New York City*, 214 F.Supp. 520, 531 (S.D.N.Y.) *aff'd on the opinion below*, 314 F.2d 343 (2d Cir. 1963), but such a showing is not a rigid requirement. *Jacobson & Co., Inc. v. Armstrong Cork Co., supra*, n. 3 at 441–42. It suffices to recognize, while considering whether a preliminary injunction should is-

sue, that courts are reluctant to grant mandatory injunctive relief, particularly here, when part of the ultimate remedy sought would be gained by a grant of this preliminary request.

Plaintiff has succeeded, however, in satisfying the requisite standard and overcoming judicial reluctance to grant preliminary injunctions of the type requested. It is manifest that plaintiff has demonstrated the threat of irreparable harm if his motion is denied, for if his name is excluded from the ballot in violation of his rights he cannot be considered for office in the ensuing election. Defendants concede the existence of irreparable injury but argue that since it results from plaintiff's own inaction in not seeking summary relief in state court, he is not entitled to equity before this Court. This contention is but a variant of defendants' threshold objection which was considered and rejected above. Its reappearance in the guise of another issue does not make it meritorious.

In the context of the alternative formulation for preliminary injunctive relief, it is clear that the hardship to plaintiff in not being considered by the Westchester constituency as a candidate in the upcoming election in possible violation of his rights far outweighs any inconvenience that defendants might suffer in having to include plaintiff's name on the ballot. Since the absentee ballots will not be printed until September 20, 1977, the inclusion of plaintiff's name thereon as a candidate for Westchester County Executive could be done at a minimum of expense.

Even were plaintiff required to show "extreme or very serious damage" for mandatory preliminary injunctive relief, *Clune v. Publishers' Assoc. of New York City, supra*, such a showing would be satisfied her for the same reason as articulated above. If his name were omitted from the ballot in violation of his rights, he would lose the opportunity to run for office.

With regard to the second prong of the standard, I find that plaintiff has demonstrated serious, substantial and difficult

questions going to the merits so as to make them a fair ground for litigation.

Defendants contend that the Supreme Court's summary affirmances of three three-judge court cases, in which durational residency requirements for political candidacy were upheld in the face of constitutional attacks foreclose the issue before this Court. *See Sununu v. Stark*, 383 F.Supp. 1287 (D.N.H.1974), *aff'd* 420 U.S. 958, 95 S.Ct. 1346, 43 L.Ed.2d 435 (1975); *Chimento v. Stark*, 353 F.Supp. 1211 (D.N.H.1973), *aff'd*, 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973); *Hadnott v. Ames*, 320 F.Supp. 107 (M.D.Ala.1970), *aff'd*, 401 U.S. 968, 91 S.Ct. 1189, 28 L.Ed.2d 318 (1971). This might be the case were the issue simply one of a durational residency requirement; however, it is not at all clear—indeed, it is highly doubtful—that the provision in question presents such a requirement.

The Charter provision requires that the county executive be a "resident freeholder" for at least five years. Defendants take the position that plaintiff was disqualified only because of residence, and not because he was not a freeholder. They readily acknowledge the unconstitutionality of requiring freeholder status. *Landes v. Town of North Hempstead*, 20 N.Y.2d 417, 284 N.Y.S.2d 441, 231 N.E.2d 120 (1967). *See Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). According to defendants, the requirement of "resident freeholder" implies the severable concepts of a resident and a freeholder, and the fact that the freeholder requirement is apparently invalid does not necessarily invalidate the "resident" requirement.

This construction, however, is a unique one by which defendant seeks to change what appears to be the adjective of "resident," modifying the noun "freeholder," into a noun itself with independent existence. Whether these terms have independent viability is a matter mandating in-depth and deliberate investigation, and necessitating an analysis of the history and purposes of the provision. It thus is not at all clear whether what is here presented is a "residency" requirement; and, there is, con-

sequently, a serious and substantial question of whether the cases cited by defendants control. If in fact what is here involved is a requirement of property ownership, it is irrelevant that defendants do not choose to invoke it to disqualify plaintiff in that manner. If it is an invalid requirement, then defendants are precluded from enforcing it in any manner.

Plaintiff's motion for a preliminary injunction is granted.

SO ORDERED.