ERNEST WINKLER et al., Appellants, v JOSEPH E. SPINNATO, as Fire Commissioner of the City of New York, et al., Respondents, and STATE OF NEW YORK, Intervenor-Respondent.

Second Department, December 28, 1987

### APPEARANCES OF COUNSEL

*Giaimo, Vreeburg & Rosen (Joseph O. Giaimo* of counsel), for appellants.

*Peter L. Zimroth, Corporation Counsel (Pamela Seidor Dolgow* and *Ronnie Dane* of counsel), for respondents.

*Robert Abrams, Attorney-General (Christopher Hall, Richard G. Liskov* and *Hugh B. Weinberg* of counsel), for intervenor-respondent.

### OPINION OF THE COURT

BRACKEN, J. P.

On this appeal, we determine that the State of New York, in enforcing its traditional policy of requiring certain employees of local governments to reside within or near the

political unit in which they serve, may draw a distinction between those public employees who have violated local residency requirements by living outside the State, and those public employees who have violated such laws by residing in unsanctioned locations within this State. Although the imposition of more stringent measures of enforcement upon the former class of public servants may be perceived as a form of discrimination against a group of persons based solely upon State residence, we conclude that that discrimination is founded upon a valid exercise of the State's authority to require its own employees, or the employees of any of its political subdivisions, to reside within this State. In our opinion, this discrimination based solely on State residence has a rational basis so as to conform with the principles of the Equal Protection Clause (US Const 14th Amend; NY Const, art I, § 11). Such discrimination, moreover, does not violate the Privileges and Immunities Clause (US Const, art IV, § 2, cl [1]). Therefore, the arguments advanced by the plaintiffs-appellants that certain recent amendments to the New York State Public Officers Law (Public Officers Law § 3 [19]; § 30 [5-a], as added by L 1986, ch 509, §§ 1, 2, eff July 22, 1986) are unconstitutional, are without merit.

## I

The plaintiffs in this action are firefighters employed by the Fire Department of the City of New York (hereinafter the fire department). Several of them do not reside within the State of New York, but live instead in New Jersey, Connecticut, or Pennsylvania. Several other plaintiffs aver that while they personally maintain a residence within this State, and within the areas described in Public Officers Law § 3 (9) and § 30 (5), their wives and children reside in homes located outside this State.

By action commenced in November 1986, the plaintiffs sought a judgment declaring that Public Officers Law § 3 (19) and § 30 (5-a), are unconstitutional as applied to them. The plaintiffs relied upon the Equal Protection and Due Process Clauses of the Federal and State Constitutions (US Const 14th Amend; NY Const, art I, §§ 6, 11) as well as the Privileges and Immunities Clause of the Federal Constitution (US Const, art IV, § 2, cl [1]).[1]

---

1. The plaintiffs first invoked the Privileges and Immunities Clause in a

In addition, the plaintiffs sought a judgment declaring that any particular firefighter who maintains a residence in one of the counties delineated in Public Officers Law § 3 (9) and § 30 (5) may not be presumed to be in violation of the residency requirements contained in those statutes solely upon the ground that the firefighter's spouse and children reside outside the State. The plaintiffs allege that their employers have utilized that presumption and have arbitrarily decreed that for purposes of applying the residency rule, a firefighter does not reside in or "inhabit" a particular place unless the firefighter's spouse and children reside at the same location.

The plaintiffs further sought an injunction (1) permanently enjoining the defendants from acting to dismiss them from their positions pursuant to the challenged provisions of the Public Officers Law, and (2) permanently enjoining the defendants from dismissing any one of the plaintiffs by reason of the residence of that plaintiff's family outside the State.

After issue was joined, the plaintiffs made a motion for summary judgment and for a preliminary injunction. The defendants responded with a cross motion to dismiss the complaint pursuant to CPLR 3211 (a) (7). Both the motion and the cross motion were denied, but the court granted summary judgment to the defendants pursuant to CPLR 3212 (b). This appeal followed.

## II

Public Officers Law § 3 (1) provides that "[n]o person shall be capable of holding a civil office who shall not, at the time he shall be chosen thereto * * * be a citizen of the United States, a resident of the state, and if it be a local office, a resident of the political subdivision or municipal corporation of the state for which he shall be chosen * * * or within which his official functions are required to be exercised". Pursuant to section 30 (1) (d) of the Public Officers Law, a public office is deemed to have become vacant as soon as its incumbent ceases to be an inhabitant of the State or political subdivision of which he was required to be a resident at the time he was chosen.

The scope of the general residency requirement embodied in

proposed amended complaint, dated May 7, 1987. The record on appeal does not establish whether leave to serve this complaint was ever granted. However, the defendants served an answer to the amended complaint without objection to the propriety of the amendments.

those provisions has undergone a gradual process of erosion in recent years. Public Officers Law § 3 is now replete with special exemptions for variously defined classes of public officers. None of these exemptions goes so far as to eliminate the requirement of United States citizenship, and only very few of the exemptions permit the officeholder to reside outside of this State (see, e.g., Public Officers Law § 3 [3], [3-a], [7] [allowing attorneys who live in another State but who practice in this State to serve as notaries public or as commissioners of deeds in the City of New York]). However, the requirement of local residence has been waived, upon various conditions, for a wide variety of local public officers.

The exemption applicable to New York City firefighters is contained in Public Officers Law § 3 (9), which provides as follows: "9. Neither the provisions of this section, nor of any general, special or local law, charter, code, ordinance, resolution, rule or regulation, requiring a person to be a resident of the political subdivision or municipal corporation of the state for which he shall be chosen or within which his official functions are required to be exercised, shall apply to the appointment of a paid member of the uniformed force of a paid fire department or to the appointment of any person employed in a department of correction in the correction service classification of the classified civil service, or to the appointment of officers and inspectors who are employees of a department of health of any city of over one million population who resides (a) in the county in which such city is located; or (b) in a county within the state contiguous to the county in which said city is located; or (c) in a county within the state contiguous to such city; or (d) in a county within the state which is not more than fifteen miles from said city." This exemption was enacted over 25 years ago (L 1962, ch 976, § 1), and has the effect of requiring New York City firefighters to reside either within the city limits, or within any one of six suburban counties (Nassau, Suffolk, Westchester, Rockland, Orange and Putnam) located within the State of New York. Public Officers Law § 30 (5) contains a parallel exemption.

### III

After it became evident that several New York City firefighters were violating the requirements of Public Officers Law § 3 (9) and § 30 (5), the fire department issued a series of orders (Order No. 41 dated Apr. 2, 1986, and Order No. 46

dated Apr. 11, 1986) pursuant to which all firefighters who believed themselves to be in violation of the residency laws were required to so notify the Inspector General, move into a lawful county by May 30, 1986, and have their families move into a lawful county by September 1, 1986, unless, "as a result of special circumstances, the member legitimately resides at a domicile different from that of his or her family". Nicholas Mancuso, as president of the Uniformed Firefighters Association, joined by other plaintiffs, made an application to the Supreme Court, New York County, for an order postponing the enforcement of the fire department Orders Nos. 41 and 46, which application was denied by Justice Baer in an order dated May 13, 1986.

Realizing that enforcement of the residency laws was about to begin in earnest, and that such enforcement would result in personal hardship to a large number of New York City firefighters, as well as other affected municipal employees, the State Legislature amended Public Officers Law § 3 and § 30 so as to, in effect, grant a qualified reprieve to residency law violators. Specifically, the Legislature added subdivision (19) to Public Officers Law § 3, and also added subdivision (5-a) to Public Officers Law § 30 (L 1986, ch 509, §§ 1, 2). Public Officers Law § 3 (19) provides as follows: "19. Any person *who resides in this state* and who is currently employed as a member of the police force, a paid member of the uniformed force of a paid fire department or department of corrections in the correctional service classification of the classified civil service, of a city of over one million population, shall be exempt from the provisions of subdivisions one, two and nine of this section upon compliance with the procedure set forth in this subdivision. Any person seeking to benefit from the exemption created by this subdivision shall notify his respective employer in writing of said intention within thirty days from the effective date of this subdivision and shall specify his then current residence address. The exemption created by this subdivision shall be applicable only to said actual designated residence and not to any residence that any subject currently employed member may thereafter establish; *provided, however, that any such currently employed member who resides outside this state shall have one year from the effective date of this subdivision within which to establish residence as required pursuant to subdivisions one, two and nine of this section* and comply with the notice requirements of this subdivision. Said residence shall constitute a lawful residence for

all purposes notwithstanding any provision to the contrary of any general, special or local law, charter, code, ordinance, resolution, rule or regulation" (emphasis supplied).

Public Officers Law § 30 (5-a) contains a parallel provision.

As can be seen, these amendments contain a distinction between two classes of residency law violators based solely upon the criterion of State residence. Violators of the residency requirements of Public Officers Law § 3 (9) and § 30 (5) are permitted to retain their current residences indefinitely if, and only if, they reside in this State. Similarly situated violators of the same statutes who live outside the State are required to leave their homes within one year or else lose their jobs. The main contention of the plaintiffs in this case is that since the conditions attached to this legislative reprieve are more stringent with respect to residency law violators who reside outside the State than with respect to those violators who reside within the State, an arbitrary classification has been created based solely upon the criterion of State residence. They claim that this offends both the Equal Protection Clauses of the State and Federal Constitutions (US Const 14th Amend; NY Const, art I, § 11) and the Privileges and Immunities Clause of the Federal Constitution (US Const, art IV, § 2).

## IV

Section 1 of the 14th Amendment of the US Constitution provides, in relevant part, that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws". This clause was written as part of one of the post-Civil War amendments and its original purpose was to raise the members of the black race, including the then recently emancipated slaves, to a position of equality with whites, and to completely extirpate from State laws any distinction founded upon the criterion of race (see, Palmer v Thompson, 403 US 217, 220; Strauder v West Va., 100 US 303; Ex parte Virginia, 100 US 339). Although its original objective was thus to protect a specific class from State-sponsored discrimination, the Supreme Court of the United States soon held that the broad language of this clause guarantees that all persons, of whatever race, will be protected from State legislation which arbitrarily discriminates against them (see, e.g., Bachtel v Wilson, 204 US 36; Buchanan v Warley, 245 US 60; Alevy v Downstate Med. Center, 39 NY2d 326, 334). The Equal Protection Clause protects citizens not only against the effects of

State laws which contain invidious distinctions between similarly situated persons, but also against the discriminatory enforcement of facially neutral statutes *(see, e.g., Yick Wo v Hopkins,* 118 US 356).

However, it has always been recognized that the Fourteenth Amendment permits the States wide discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds "wholly irrelevant to the achievement of the State's objective" *(McGowan v Maryland,* 366 US 420, 425; *see also, Eisenstadt v Baird,* 405 US 438, 446-447). Under the traditional "rational-basis" test, a State law which authorizes the disparate treatment of different classes will be upheld if the classification embodied in the law is founded upon some basis "having a fair and substantial relation to the object of the legislation" *(Royster Guano Co. v Virginia,* 253 US 412, 415; *see also, Johnson v Robison,* 415 US 361, 374-375; *Reed v Reed,* 404 US 71, 75-76).

Of relatively recent vintage in the history of the judicial interpretation of the Equal Protection Clause are those decisions which hold that legislatively created classifications will be subject to a more exacting form of judicial scrutiny wherever the criterion upon which the distinction is based is a "suspect" one *(e.g., Korematsu v United States,* 323 US 214, *reh denied* 324 US 885 [racial criterion]) or wherever the classification may be said to affect a "fundamental right" *(e.g., Reynolds v Sims,* 377 US 533, *reh denied* 379 US 870 [right to vote]). But it has been expressly held that there "is no fundamental right to government employment for purposes of the Equal Protection Clause" *(United Bldg. & Constr. Trades v Mayor,* 465 US 208, 219; *Massachusetts Bd. of Retirement v Murgia,* 427 US 307, 313; *see also, Vance v Bradley,* 440 US 93, 96-97; *Maresca v Cuomo,* 64 NY2d 242, 250, *appeal dismissed* 474 US 802), and the plaintiffs cite no authority for the proposition that residents of other States comprise a "suspect" class for the purposes of equal protection (although, as discussed below, the Privileges and Immunities Clause may prohibit discrimination based on State residence, even where such discrimination could be said to have a rational basis). Thus, the legislative classification created in the statutory amendments under review should not be overridden by the courts unless no rational basis for the distinction exists.

Because there is no fundamental right to public employment, the Supreme Court of the United States has applied

this "rational basis" test in upholding laws which contain local, *intra*state residency requirements, and which thus distinguish between those who reside within a particular locality and those who do not *(see, McCarthy v Philadelphia Civ. Serv. Commn.,* 424 US 645; *Detroit Police Officers Assn. v City of Detroit,* 385 Mich 519, 190 NW2d 97, *appeal dismissed for lack of a substantial Federal question* 405 US 950). Several courts throughout the Nation similarly have upheld laws which require the employees of local governments to live within (or near) the boundaries of the political subdivision in which they are employed *(see, e.g., Carofano v City of Bridgeport,* 196 Conn 623, 495 A2d 1011; *Ector v City of Torrance,* 10 Cal 3d 129, 109 Cal Rptr 849, 514 P2d 433, *cert denied* 415 US 935; *Lines v City of Topeka,* 223 Kan 772, 577 P2d 42; *Abrahams v Civil Serv. Commn.,* 65 NJ 61, 319 A2d 483; *Loiselle v City of E. Providence,* 359 A2d 345 [RI]; *Wardwell v Board of Educ.,* 529 F2d 625 [6th Cir]; *Mogle v Sevier County School Dist.,* 540 F2d 478 [10th Cir], *cert denied* 429 US 1121; *Ahern v Murphy,* 457 F2d 363 [7th Cir]; *Wright v City of Jackson,* 506 F2d 900 [5th Cir]). "[L]ocal governments may lawfully require as a condition of employment that employees reside within their territorial limits" *(Mandelkern v City of Buffalo,* 64 AD2d 279, 280; *see also, Mazzo v County of Monroe,* 58 AD2d 1017, 1018).[2]

An important distinction must be observed between the laws which were upheld in these cases and the amendments to the Public Officers Law before us in this case. Each of the cases cited involved a law or ordinance conditioning public employment or some advantage of public employment upon residence within a particular geographic area. Such laws apply even-handedly to all those who fail to reside within the area described in the law, regardless of State residence. The amendments before us here involve a form of discrimination based solely upon State residence. Indeed, the plaintiffs take no position on the validity of the original residency requirements contained in Public Officers Law § 3 (9) and § 30 (5), and we assume their validity for the purposes of this appeal. The

─────────────────────────

2. Such a residency requirement was, however, invalidated under the provisions of New Hampshire's State Constitution in *Angwin v City of Manchester* (118 NH 336, 386 A2d 1272) and *Donnelly v City of Manchester* (111 NH 50, 274 A2d 789). This result is contrary to the general consensus among State and Federal courts alike, and we reject it as unfounded. It is also *note*worthy that at least one court, prior to the Supreme Court's decision in *McCarthy v Philadelphia Civ. Service Commn.* (424 US 645) upheld the validity of such a residency requirement even under a "strict scrutiny" standard *(see, Krzewinski v Kugler,* 338 F Supp 492 [NJ]).

sole argument advanced by the plaintiffs is that the ameliorative amendments to those statutes (Public Officers Law § 3 [19]; § 30 [5-a]) are unconstitutional because they involve an arbitrary discrimination between similarly situated individuals based solely upon State residence.

The criterion upon which the classification contained in the challenged amendments is based, i.e., State residence, bears no logical relationship to several of the governmental interests which are frequently cited as justification for local residency requirements. For example, the legitimate interest that a local government might have in diminishing tardiness or absenteeism is not advanced by the creation of a classification among employees based solely upon State residence. As is illustrated by the present case, there is no necessary correlation between residence within a particular State and proximity to a particular area. In the present case, for example, it is evident that several firefighters who reside in New Jersey have much easier access to the place of their employment than their co-workers who reside north of Orange and Putnam Counties in New York State. Yet, under the classification created by the amendments under review, the New Jersey residents are treated in a substantially less favorable way.

Similarly, a local government's legitimate interest in promoting among its employees a knowledge of, and sense of loyalty to, the community they serve cannot be cited as a rational foundation for the classification devised by the Legislature in the present case, since the distinction embodied in the challenged legislation is not between those who, as residents, would spend more time in a given community, and those who, as nonresidents, would spend less time in the community; instead, the distinction is between two classes of persons, none of whom reside within the community in which they are employed (New York City). Thus, a legitimate desire to foster among local officials a familiarity with local conditions may not be cited as a basis for a distinction made between the two classes of nonresidents.

■ However, the "rational basis" upon which to justify the classification between State residents and out-of-State residents need not relate to the improvement of fire protection; the State may classify employees and the employees of its political subdivisions so as to encourage residence inside the State for any valid reason, including the obvious financial one. Public employees who reside in New York are more likely, as a class, to spend their money in New York. Further, public

employees who reside in New York are more likely to own real estate here, and so pay property taxes, as well as resident State income tax. For these financial reasons alone, New York may doubtless seek to encourage its employees, and all local public employees as well, to reside within the State, and this may be accomplished through the enforcement of a requirement that any State or local employee, as a condition of employment, must reside in the State. It is this fiscal consideration which serves as the rational basis upon which to justify the preference given in this case to the New York City firefighters who reside in the State of New York, regardless of their geographical distance from New York City, over the similarly situated firefighters who reside in New Jersey or elsewhere.[3] Economic self-interest, therefore, is a legitimate State interest which serves to justify the distinction between State residents and out-of-State residents.

In short, the amendments under review meet the "rational basis" test and so comport with principles of equal protection.

## V

There remains to be addressed the plaintiffs' contention that the challenged amendments violate the Privileges and Immunities Clause of the Federal Constitution.[4] This is a substan-

---

**3.** It may also be noted that these economic concerns which justify discrimination on the basis of State residence, are not available to serve as justification for discrimination based on alienage. Lawfully resident aliens " 'work in the state and contribute to the economic growth of the state' " (*Graham v Richardson,* 403 US 365, 376). Those decisions which invalidate legislative distinctions based on alienage are therefore not controlling (*see, Sugarman v Dougall,* 413 US 634 [broad prohibition against employment of aliens in civil service unconstitutional]; *cf., Ambach v Norwick,* 441 US 68; *Foley v Connelie,* 435 US 291 [discrimination against aliens in certain narrow areas of public employment allowed]).

**4.** Although in their complaint, the plaintiffs do not rely upon the separate constitutional right to travel, several of the cases upon which they rely on appeal were decided on the basis of the existence of that right (*e.g., Attorney Gen. of N. Y. v Soto-Lopez,* 476 US 898, 106 S Ct 2317; *Memorial Hosp. v Maricopa County,* 415 US 250; *Shapiro v Thompson,* 394 US 618). The cases cited above dealt with legislative distinctions based upon the *duration* of a particular person's residence in a given State, not upon the criterion of State residence itself. The validity of a *durational* residency requirement is not at issue in the present case (*cf., Matter of Berger v Friese,* 45 AD2d 734, *appeal dismissed* 35 NY2d 712; *Phelan v City of Buffalo,* 54 AD2d 262). Those cases are therefore inapposite. The right to travel includes the right "to migrate, resettle, find a new job, and start a new life" (*Shapiro v Thompson, supra,* at 629), and does not protect any supposed right of

tially different issue than that posed with respect to the Equal Protection Clause.

Clause (1) of US Constitution, article IV, § 2 provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States". This provision, which, like the Commerce Clause, was derived from article IV of the Articles of Confederation, has among its principal goals the promotion of national economic unity, the elimination of protectionist burdens on interstate commerce, and the prevention of discrimination by States against citizens of other States (see, *Hicklin v Orbeck,* 437 US 518, 523-524; *Baldwin v Montana Fish & Game Commn.,* 436 US 371, 378-382; *Toomer v Witsell,* 334 US 385, *reh denied* 335 US 837; *Slaughter-House Cases,* 83 US 36). In *Toomer v Witsell (supra,* at 396), it was stated that the Privileges and Immunities Clause "bar[s] discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States". In *Hicklin v Orbeck (supra,* at 525), the Privileges and Immunities Clause was held to place limits "on a State's power to bias employment opportunities in favor of its own residents". Certainly, based upon dicta such as this, an argument can be made that the amendments now under review, which clearly discriminate against residents of other States, and which clearly bias employment opportunities in favor of residents of this State, offend the Privileges and Immunities Clause. It may well be argued that although the achievement by this State of an economic advantage over its neighbors is a *rational* basis for the sort of discrimination fostered by the amendments under review, it is not a *legitimate* basis for such discrimination because it violates the main purpose of the Privileges and Immunities Clause, which is to "prevent * * * a State from discriminating against nonresidents merely to further its own parochial interests or those of its residents" *(Matter of Gordon,* 48 NY2d 266, 271).

However, upon a closer examination of the history of the Privileges and Immunities Clause, it is apparent that it would be overly simplistic to suggest that that clause was meant to

movement back and forth across the State lines as part of a commute to work *(see, Carofano v City of Bridgeport,* 196 Conn 623, 495 A2d 1011, 1020). Thus, we do not believe that the right to travel is implicated in the present case. Also, we do not consider plaintiffs' arguments based on the Due Process Clauses of the Federal or State Constitutions to be any different than those advanced under the Equal Protection Clause.

prohibit all forms of discrimination based on State residence. A State may, for example, prohibit nonresidents from demanding State services which are restricted to residents *(see, e.g., Martinez v Bynum,* 461 US 321 [upholding State law restricting right to tuition-free school to State residents]; *Vlandis v Kline,* 412 US 441, 452-453 [upholding right of State to give preference to State residents with respect to tuition at State colleges]). A State may also prevent nonresidents from voting in State elections *(see, Dunn v Blumstein,* 405 US 330). As noted in *Baldwin v Montana Fish & Game Commn. (supra,* at 383), "Some distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single Union of those States. Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally".

■ We are of the opinion that a State law which requires that any or all of its own officers or employees, or any of the officers or employees of its political subdivisions, must reside within the State, does not violate the Privileges and Immunities Clause, because State or local public employment is not a "privilege" which " 'bear[s] upon the vitality of the Nation as a single entity' " *(see also, Matter of Gordon,* 48 NY2d 266, 271, *supra).* Thus, it cannot be claimed that the amendments under review, which in effect enforce the requirement of New York State residence for public employees, are unconstitutional.

It has been specifically stated that the Privileges and Immunities Clause is not offended by a State law which requires State residence as a qualification for elective office *(Baldwin v Montana Fish & Game Commn.,* 436 US 371, 383, *supra).* Similarly, the New York Court of Appeals, in *Matter of Gordon (supra,* at 271) noted that a State may distinguish between residents and nonresidents with respect to the "entitlement to public office". These statements are based on the view that a State's ability to require that its employees, or the employees of its political subdivisions, reside within the State is a matter "which directly implicate[s] its sovereignty" *(see, Matter of Gordon,* 48 NY2d 266, 271, *supra).* In other words, the right to hold a State office is not a "privilege" protected by this constitutional provision *(Hogan v Hartwell,* 242 Ala 646, 7

So 2d 889, 891; *Shaw v City Council,* 131 Iowa 128, 104 NW 1121, 1124).

More recent cases from the Supreme Court of the United States reflect the view that public employment is to be distinguished from private employment, and that discrimination based on State residence may be tolerated in connection with the former, although not with the latter. In *United Bldg. & Constr. Trades v Mayor* (465 US 208, 219, *supra),* the court held that a law, pursuant to which State residents were preferred to nonresidents in connection with certain public work projects, was held unconstitutional, and stated that "[p]ublic employment * * * is qualitatively different from employment in the private sector". Although public funds were being expended on the work projects under review in that case, the court held that a local residency requirement represented an effort to "bias *private* employment decisions in favor of [State] residents" *(United Bldg. & Constr. Trades v Mayor, supra,* at 221 [emphasis supplied]). The clear implication is that purely *public* employment decisions, consistent with the Federal Constitution, may favor State residents.

Similarly, in *Supreme Ct. of N. H. v Piper* (470 US 274), a rule requiring State residence as a condition for admission to the Bar was held to be unconstitutional. It was noted that the practice of the law did not involve an " 'exercise of state power' " *(Supreme Ct. of N. H. v Piper, supra,* at 282). The court further stated that the State powers entrusted to lawyers did not " 'involve matters of state policy or acts of such unique responsibility as to entrust them only to citizens' " *(Supreme Ct. of N. H. v Piper, supra,* at 283, quoting from *In re Griffiths,* 413 US 717, 724). Because lawyers are not State officials in a political sense, the practice of law could be considered an area of employment opportunity within the scope of the Privileges and Immunities Clause. The implication, again, is that discrimination based on State residence with respect to purely public offices is not subject to scrutiny under the Privileges and Immunities Clause.

Further indication that the Privileges and Immunities Clause does not inhibit the States from preferring their own residents in connection with public employment opportunities can be found in the case of *Woods v City of New York* (129 Misc 2d 851, *mod on other grounds* 119 AD2d 469, *affd* 69 NY2d 771). In *Woods,* a provision of New York law in connection with promotional opportunities in certain civil service employment, pursuant to which resident veterans are pre-

ferred over nonresident veterans, specifically, the rule allowing honorably discharged veterans of the armed services who reside in New York to receive an additional 2½ points on certain civil service examinations, was upheld (NY Const, art V, § 6). A constitutional challenge to that provision premised on the argument that it entailed discrimination against veterans who resided in New Jersey, and so violated the Privileges and Immunities Clause was specifically rejected.

The argument that the Privileges and Immunities Clause should be interpreted so as to prohibit discrimination based upon State residence, even with respect to a State's definition of the qualifications required of its own employees, exalts one interest protected by the Federal Constitution, that is, the encouragement of economic harmony between the States, to the complete exclusion of another even more basic constitutional value, that is, the preservation of individual State sovereignty. "The States unquestionably do 'retai[n] a significant measure of sovereign authority' " *(Garcia v San Antonio Metro. Tr. Auth.,* 469 US 528, 549, quoting from *Equal Employment Opportunity Commn. v Wyoming,* 460 US 226, 269; *see also, Reeves, Inc. v Stake,* 447 US 429, 438, n 10; *Boyd v Thayer,* 143 US 135, 161; *cf., Sugarman v Dougall,* 413 US 634, 647, supra).* The plaintiffs have not demonstrated by any evidence, historical or otherwise, that it was intended or expected that the Privileges and Immunities Clause, the principal goal of which was designed to achieve the economic unity of the United States, should override the equally compelling interest of preserving the independent interests of each sovereign State. We perceive no valid basis, therefore, for the extension of the proscriptions of the Privileges and Immunities Clause beyond the realm of private economic activity or beyond the realm of private economic activity in which a State may have some role *(see, United Bldg. & Constr. Trades v Mayor, supra; see also, Salla v County of Monroe,* 48 NY2d 514, *cert denied* 446 US 909 [invalidating statutory preference for State residents in public work projects]; *cf., People v Crane,* 214 NY 154, *affd* 239 US 195), and into the purely public area of direct employment by a State or by any of its political subdivisions. As a basic matter of its own sovereignty, "the state may confine to citizens the right to hold public office" *(People v Crane, supra,* at 163).

The State of New York may therefore enforce its rule requiring New York City firefighters to reside within State. The State may do so, even while choosing not to similarly

enforce its rule requiring New York City firefighters to reside within or near New York City. No valid objection can be raised to the sections of the Public Officers Law now under review (Public Officers Law § 3 [19]; § 30 [5-a]) which, in effect, impose harsher enforcement measures on those who have violated both State *and* local residency requirements than upon those who have violated the local residency requirements *only*. Although this does amount to discrimination on the basis of State residence, it is a valid form of discrimination since it is designed to further the State's rightful goal of limiting to its own citizens the privilege of public employment.

We therefore conclude that the statutory amendments under review are valid.

## VI

◼ In addition to their request for a judgment declaring that Public Officers Law § 3 (19) and § 30 (5-a) are unconstitutional, the plaintiffs sought "a declaratory judgment that a fireman may be a lawful inhabitant and domiciliary of a lawful county under the provisions of [Public Officers Law] section 30 irrespective of the domicile or residency of his family and irrespective of the fact that he may have more than one residence". In order to warrant the granting of such declaratory relief, it must appear that the defendants have taken the position that a firefighter may *not* be in compliance with Public Officers Law § 30 unless he or she resides with his or her family and unless he or she maintains only one residence. Since the defendants have not taken such a position, but instead acknowledge that a firefighter *may* be in compliance with the residency law, even though he or she maintains more than one residence, or lives apart from his or her family, no actual controversy exists. Where there is no genuine dispute between the parties, the courts are precluded, as a matter of law, from issuing a declaratory judgment *(see, State Farm Fire & Cas. Co. v LiMauro,* 103 AD2d 514, 517-518, *affd* 65 NY2d 369; *Combustion Eng'g v Travelers Indem. Co.,* 75 AD2d 777, 778-779, *affd* 53 NY2d 875).

The defendant Joseph Spinnato, in an affidavit submitted in support of the defendants' motion to dismiss (CPLR 3211 [a] [7]), admitted that the fire department in April of 1986 issued Orders Nos. 41 and 46, pursuant to which firefighters thought to be in violation of the residency law were notified that their families would be required to move to a residence within the

lawful counties "unless, as a result of special circumstances, the member legitimately resides at a domicile different from that of his or her family". Since the record contains no indication as to what circumstances would be considered by the defendants as sufficiently "special" to dispel the natural inference that a married person would be more likely to maintain a principal residence with his or her family than apart from it, there is no way of assessing exactly what degree of conclusiveness the defendants will attribute to such a presumption. It is clear, however, that the presumption that an individual resides with his or her family is not considered irrebuttable, because a provision for a "special circumstances" exception is made. Thus, there is no merit to the allegation contained in the plaintiffs' complaint that the two orders "implicitly [include] a pre-determined and conclusive finding, ruling, and an irrebuttable presumption by the defendants that a fireman may not be an inhabitant and/or domiciliary of a lawful county if 'his or her family' resides outside the State". The plaintiffs offer nothing to counter Mr. Spinnato's sworn statement that "[i]t is not and has not been the policy of the Fire Department to irrebuttably presume that a member lives outside the State of New York if his family does so". This assertion has been repeated by the defendants' attorneys in open court.

The plaintiffs also allude to a form provided by the fire department to candidates for promotion, in which the candidate is called upon to certify that his or her spouse and minor children reside within the area designated in Public Officers Law § 3 (9) and § 30 (5). The defendants' use of this form does not indicate the existence of an irrebuttable presumption that any person whose family does not reside within the designated area must be in violation of the residency law. Candidates may delete portions of the form, and there is no proof that candidates have been disciplined *solely* because of any inability to certify that a spouse or children reside in the lawful counties. In short, there is no evidence to contradict the defendants' assertion that no irrebuttable presumption exists, and that, in the words of the defendant Spinnato, "[q]uestions of residency are and have been determined on a case by case basis".

Since the defendants, therefore, do not dispute the proposition that the question of the various plaintiffs' compliance with the residency law may not be judged solely upon the basis of the residence of any of the plaintiffs' families, there is

no need for a judicial declaration as to whether that proposition is correct. "One is not entitled to a declaratory judgment absent 'concrete legal issues, presented in actual cases, not abstractions' " *(Phelan v City of Buffalo,* 54 AD2d 262, 264, quoting from *United Pub. Workers v Mitchell,* 330 US 75, 89).

Accordingly, the judgment appealed from should be modified, by adding a provision thereto declaring Public Officers Law § 3 (19) and § 30 (5-a) constitutional as applied to the plaintiffs *(see, Lanza v Wagner,* 11 NY2d 317, 334, *appeal dismissed* 371 US 74, *cert denied* 371 US 901), and, as so modified, the judgment should be affirmed.

Brown, Niehoff and Kooper, JJ., concur.

Ordered that the judgment is modified, on the law, by adding a provision declaring that Public Officers Law § 3 (19) and § 30 (5-a) are constitutional as applied to the plaintiffs; as so modified, the judgment is affirmed, with one bill of costs payable to the defendants and the intervenor appearing separately and filing separate briefs.